UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

WILLIE LEE EDWARDS, JR.,                                          Case No. 22-10286-t7

    Debtor.

ILENE J. LASHINSKY, United States Trustee,

    Plaintiff,

v.                                                                                        Adv. No. 22-01014-t

WILLIE LEE EDWARDS, JR.,

    Defendant.

## **OPINION**

Before the Court in the United States Trustee's ("UST's") motion for entry of default judgment against Defendant Willie Lee Edwards, Jr. The UST asserts that, although Defendant filed three documents in this adversary proceeding, he did not answer the complaint, does not intend to defend, and is in default. The Court agrees. The Court will enter Defendant's default and a separate default judgment.

A.    Facts.[1]

    The Court finds:[2]

---

[1] The Court takes judicial notice of the docket in this case and in the pending criminal case against Defendant in the United States District Court for the District of New Mexico, *United States v. Willie Lee Edwards*, 1:19-cr-00593-JCH-1 (the "Criminal Case"). *See, e.g., St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.,* 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may sua sponte take judicial notice of its docket and of facts that are part of public records).
[2] Some of the Court's findings are in the discussion section of the opinion. They are incorporated by this reference.

Defendant filed this chapter 7 bankruptcy case on April 8, 2022. With his petition, Defendant filed his bankruptcy schedules and statement of financial affairs ("SOFA"). Defendant attached 54 pages of documents, all of which are nonsensical and typical of "sovereign citizen" nuisance litigation. The petition and schedules are signed "UCC1-308 without prejudice, by Willie lee: Edwards jr."[3] The SOFA is signed "UCC1-308 All rights reserved without prejudice, by Willie Lee: Edwards jr."

On Defendant's petition and other bankruptcy case filings he listed his mailing address as 3167 San Mateo NE, #272, Albuquerque, NM 87110. This is a UPS store that provides mailbox services. Defendant's petition also states that he lives in an apartment on Girard Boulevard in Albuquerque, New Mexico.

On the petition date, the Criminal Case had been pending for more than three years. With the superseding indictment and other documents filed in the Criminal Case, the United States alleged that in a seven-week period in early 2018, Defendant defrauded eight credit unions and banks, in violation of 18 U.S.C. § 1014. According to Defendant's bankruptcy schedules, he owes these institutions more than $500,000.00. The alleged fraud included lying about his current income on numerous auto loan applications (he was unemployed at the time) and submitting false W-2s and pay stubs. The United States also alleged that Defendant resold cars he bought with the fraudulently obtained loans and kept the sale proceeds rather than giving them to the lenders. Defendant eventually pled guilty to all ten fraud counts.

Defendant, however, refused to plead guilty to the final count in the superseding indictment, which charged him with the illegal possession of a firearm (he was convicted of a

---

[3] Section 1-308 of the Uniform Commercial Code is entitled "Performance or Acceptance Under Reservation of Rights," and is irrelevant to this matter.

felony in 2001 and convicted felons are prohibited from owning firearms). On January 31, 2022, Judge Judy Herrera set a jury trial on the final, unresolved count for April 18, 2022, starting at 9:00 a.m.

At the appointed date and time, an assistant U.S. attorney, Defendant's counsel, and numerous prospective jurors presented themselves before Judge Herrera. Not so the Defendant. At 9:33 that morning he came to the courthouse and filed several documents in the bankruptcy case. Judge Herrera's courtroom was on the same floor, across the rotunda. Eleven minutes later, at 9:44 a.m., he filed a "Notice of Beneficiary Bankruptcy to Liquidate All Bonds" in the Criminal Case. He then left the courthouse, in violation of the district court's Order Setting Conditions of Release.[4]

When it became clear that Defendant would not appear for trial, Judge Herrera issued a bench warrant for his arrest. Defendant proved difficult to apprehend. He quit his job, left his car at his workplace, stopped using his cell phone, and moved to an unknown address. The FBI finally arrested him eleven months later, on March 16, 2023, in Albuquerque.

About six weeks after Defendant went on the lam, the UST filed the complaint that commenced this adversary proceeding. In the complaint, the UST asked that the Court deny Defendant's bankruptcy discharge under §§ 727(a)(3), (4), and/or (5) of the Bankruptcy Code.[5] The UST alleged, inter alia:

- Defendant attempted to pay the bankruptcy court filing fee with a false and fraudulent instrument;
- In his petition, Defendant claims to be a business debtor but Defendant testified at the 341 Meeting of Creditors that his business, "CHOOSE TO WIN," is "not open" and last did business "five years ago." He further testified that "WILLIE LEE EDWARDS JR LLC" "didn't do anything and did not ever have any assets." Defendant stated the GSA Bid Bond referenced in his petition and schedules was associated with his criminal case involving "lying on an application." He stated that "bonds are money" and he is a beneficiary of "the all-caps name of WILLE LEE

---
[4] Entered in the Criminal Case on March 5, 2019.
[5] Unless otherwise indicated, all statutory references are to Title 11 of the United States Code.

EDWARDS JR" based on his birth certificate being "on bond paper" which "is registered with the Treasury" and "there is no money but is credit." Defendant confirmed his birth certificate document is worth $100,000,000.00 because "that is part of his assets" and "is there for collateral." Mr. Edwards could not explain his understanding of "bonding" but the "DA can explain it more."

- At the 341 Meeting of Creditors, Defendant further testified his bond was secured by "the stock market" and has a value of approximately $900,000,000.00.
- In the petition, Defendant indicates his assets are estimated to be worth between $0 and $50,000.00, and that his estimate of liabilities is between $100,001 and $500,000. (Doc 1, p. 6).
- In Schedule A/B, line 18, Defendant fails to disclose the value of "Bonds, mutual funds, or publicly traded stocks." (Doc. 1, p. 14).
- In Schedule A/B, line 20, Defendant fails to disclose the value of "Government and corporate bonds and other negotiable and non-negotiable instruments" after acknowledging he has such assets which he describes as "GSA BID BOND 19-CR-00593JCH NEGOTIABLE," "GSA PERFORMANCE BOND 19-CR-00593JCH NEGOTIABLE" and "GSA PAYMENT BOND 19- CR-00593JCH NEGOTIABLE." (Doc. 1, p. 15).
- In Schedule A/B, line 25, Defendant falsely and fraudulently states he has "Trusts, equitable or future interests in property… and rights or powers exercisable for [his] benefit" which he describes as "BIRTHCERTIFICATE DOCUMENT #8665/ SS# 8624" valued at $100,000,000.00. (Doc. 1, p. 16).
- In Schedule A/B, line 26, Defendant falsely and fraudulently states he has "Patents, copyrights, trademarks, trade secrets, and other intellectual property" which he describes as "Copyright of trade-name/Trademark WILLIE LEE EDWARDS JR TRUST Including any and all derivatives and veriations [sic] in the spelling" valued at $100,000,000.00. (Doc. 1, p. 16).
- In Schedule A/B, line 31, Defendant falsely and fraudulently describes his "Interests in insurance policies" as three "GSA BONDS" but fails to disclose a value. (Doc. 1, p. 17).
- In Schedule D, Defendant falsely and fraudulently indicates the United States is a creditor and its claim is secured by "Birthcertificate #8665" which has a value of $100,000,000.00. (Doc. 1, p. 20).
- In the SOFA, line 9, Defendant falsely and fraudulently characterizes the nature of his criminal case, United States v. Willie Lee Edwards Jr, case number 19-CR-00593 JCH as "I am being sued for collection on a debt CFR27 section 72.11 HJR-192." In truth, Mr. Edwards was indicted by a federal grand jury on February 27, 2019 for five counts of False Statements on a Loan or Credit Application. On June 9, 2021, Mr. Edwards was charged with ten counts of False Statements on a Loan or Credit Application and an additional count of being a Prohibited Person in Possession of a Firearm and Ammunition.
- In addition to the petition and schedules filed on April 8, 2022, Defendant submitted false and fraudulent documents in support of his filings. (Doc. 1-1, pp. 1-30; Doc. 1-2, pp. 1-24).
- In a purported UCC Financing Statement, Defendant falsely asserts Willie Lee Edwards Jr Trust© is a "Transmitting Utility." (Doc. 1-1, p. 14).

- In a purported UCC Financing Statement Amendment, Defendant falsely and fraudulently asserts Willie Lee Edwards Jr Trust© has collateral described as "All Certificates of Birth Document 8665*, SSN/UCC Contract Trust Account- prepaid account Number 8624; Exemption Identification Number 8624, is herein liened and claimed at a sum certain $100,000,000.00, also registered: Security Agreement No. 8665*WLE-SA, Hold Harmless & Indemnity Agreement No. 8665*WLE-HHIA, Copyright under item no.:8665*WLE-CLC…" (Doc. 1-1, p. 14).
- In a purported IRS Form 56 Notice Concerning Fiduciary Relationship, Defendant fraudulently appoints "Francisco pares, et al D.B.A. SECRETARY OF TREASURY" as a fiduciary for "WILLIE LEE EDWARS JR TRUST©". Defendant falsely asserts the appointment was pursuant to a valid trust instrument and that "Francisco Pares Alicea" signed the document. (Doc. 1-1, p. 17).
- In a purported IRS Form 56 Notice Concerning Fiduciary Relationship, Defendant fraudulently appoints "Janet Yellen, et al D.B.A. SECRETARY OF TREASURY (UNITED STATES)" as a fiduciary for "WILLIE LEE EDWARDS TRUST©" without her consent or authority. Defendant falsely asserts the appointment was pursuant to a valid trust instrument and that "Janet Yellen" signed the document. (Doc. 1-1, pp. 18-19).
- In a purported RELEASE OF LIEN ON REAL PROPERTY, Defendant falsely and fraudulently represents he is "a duly authorized representative of the United States Government as a warranted contracting officer." (Doc. 1-2, p. 23).
- In a purported RELEASE OF PERSONAL PROPERTY FROM ESCROW, Defendant falsely and fraudulently represents he is "a duly authorized representative of the United States Government as a warranted contracting officer." (Doc. 1-2, p. 24).

The allegations in the complaint are easy to verify by comparing them to Defendant's petition, schedules, SOFA, and other bankruptcy case filings. Many (not all) of Defendant's statements in these documents are outlandish and obviously false. They show a disregard of the truth, the requirements of Bankruptcy Code, or the criminal laws against false oath and perjury.[6]

The Court has jurisdiction over the proceeding under 28 U.S.C. §§ 157 and 1334.

On July 5, 2022, the Clerk of Court issued a summons to Defendant. The summons required Defendant to answer the complaint on or before August 4, 2022. The summons also notified

---

[6] *See* 18 U.S.C. §§ 152(2) and 1621.

Defendant that a scheduling conference would be held on August 16, 2022, at 9:45 a.m. at the U.S. Courthouse, 333 Lomas Blvd. NW, 5th Floor, Albuquerque, NM 87102 in the Brazos Courtroom.

On July 8, 2022, the UST served the complaint and summons on Defendant by first class United States mail, postage pre-paid, to Defendant at his mailing and residence addresses. Under Fed. R. Bankr. P. ("Bankruptcy Rule") 7004, service was proper.

On July 18, 2022, Defendant filed a 6-page document entitled "Notary Presentment." The first portion is signed by Maithem J. Sarraj, allegedly a notary public in Gwinnett County, Georgia. It is addressed to the acting director of the UST's office in Washington, D.C. The balance of the document is an "Affidavit of Truth" purporting, maybe, to contain statements by the Defendant.[7] The affidavit is unsigned.

On August 2, 2022, Defendant filed a 4-page document entitled *Notice of Motion and Ex-Parte Emergency Motion to Stay Any Further Process or Proceedings Pending Removal of Disabilities of Minority and Restoration of All Rights* (the "Notice of Motion"). The Notice of Motion and Notary Presentment were also filed in the main case.[8] The document provides in part:

**EX PARTE EMERGENCY MOTION TO STAY ANY FURTHER PROCESS OR PROCEEDINGS PENDING REMOVAL OF DISABILITIES OF MINORITY AND RESTORATION OF ALL RIGHTS**

> In the interest of equity, justice and judicial jurisprudence, Petitioner hereby motions this Court for a temporary ex-parte emergency stay of all further process and proceedings on this matter until the removal of disabilities of minority, with regards to the style, status and condition of the name WILLIE LEE EDWARDS JR, representative of a minor account, has been changed to Willie Lee Edwards Jr, and in doing so, removing those now known disabilities, so that he may bring or defend any new or pending suit in law or equity within this Court's jurisdiction, or any other Court.

---

[7] The signature block on the affidavit is for "Ramona D. Eliott, United directing/Executive Trustee." Below this is an unsigned "Avouchment," purportedly of Defendant.

[8] In the main case, on August 24, 2022, the Court entered an order denying the Notice of Motion as incomprehensible.

> One such disability is that of "Latent Ambiguity", in which such disabilities equate to a condition of corporate status. Due to this matter of latent ambiguity, all preceding legal instruments filed with the Court regarding this matter, are essentially VOID on their face as a violation of the Vagueness doctrine. This is but one example of such condition of an "implied" status and condition after attaining the Age of Majority.

The Notice of Motion goes on in a similar vein for four pages. Like the Notary Presentment, the Notice of Motion is not a good faith attempt to plead or otherwise defend. Like the Notary Presentment, the Notice of Motion includes Defendant's San Mateo mailing address.

On August 16, 2022, the Court conducted the initial scheduling conference. The attorney for the UST appeared. Defendant did not.

On March 13, 2023, the Court Clerk's office served on the parties a notice that the Court would hold a status conference in the adversary proceeding on April 3, 2023, at 9:30 a.m. Defendant was served by mail at the San Mateo address. Service of the notice was proper.

The FBI apprehended Defendant three days later and took him into custody, where he has remained.

The UST filed the motion for default judgment on March 31, 2023. The motion included an Affidavit of Non-Military Service. The UST served the motion on Defendant at the addresses listed on Defendant's bankruptcy petition, including the San Mateo address. Service was proper.

The Court held the status conference on April 3, 2023. At the conference, the UST's counsel brought up the motion for default judgment and argued that it was appropriate to grant the motion without further notice or hearing. The Court took the matter under advisement.

B.     <u>Entering a Default</u>.

Fed. R. Civ. P. ("Rule") 55(a)[9] provides:

---

[9] This Rule is made applicable by Bankruptcy Rule 7055.

**(a) Entering a Default.** When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

The Court construes the UST's motion for default judgment as both a request that the Court enter Defendant's default and a request for a default judgment.

Courts in this district have held that they, as well as the clerk, may enter a party's default. *See, e.g., Nevada General Insurance Co. v. Anaya,* 326 F.R.D. 685, 690–91 (D.N.M. 2018) (citing *City of New York v. Mickalis Pawn Shop*, 645 F.3d 114, 128 (2d Cir. 2011), the court held that it had the power to enter a default under Rule 55(a)); *see also Tratt Industries, LLC v. Patterson,* 2019 WL 4919098, at *4 (D.N.M.) ("although Rule 55(a) contemplates that entry of default is a ministerial step to be performed by the clerk of court, a district judge also possesses the inherent power to enter a default").

In addition to a failure to plead, a default must be entered if the defendant fails to "otherwise defend." Most courts have interpreted "otherwise defend" to allow entry of default for persistent discovery misbehavior, failure to appear, or abandonment of active defense. In *Anaya*, for example, Judge Armijo opined:

> Examination of the relevant authorities reveals, however, that the relevant question is whether a defendant has indicated an intent to defend against the complaint. . . *see* Wright & Miller, *supra* [10A Wright & Miller, Fed. Prac. & Proc. Civ. §2682 (4th ed.)] (stating that "[a] defendant who has participated throughout the pretrial process and has filed a responsive pleading, *placing the case at issue*, has not conceded liability" and that "[t]he mere appearance by a defending party, without more, will not prevent the entry of a default for failure to plead or otherwise defend" unless the "defendant appears *and indicates a desire to contest the action*" (emphasis added)).

326 F.R.D. at 692 (Wright & Miller citation added); *see also Tirado v. Express Home Solutions L.L.C.*, 2023 WL 34472, at *2 (D.D.C.) (citing *Anaya* with approval); *World Fuel Services, Inc. v. Bales*, 2020 WL 3367278, at *2 (W.D. Okla.) (same); *see generally Hoxworth v. Blinder, Robinson*

& Co., Inc.,* 980 F.2d 912, 917 (3d Cir. 1992) ("by its very language, the "or otherwise defend" clause is broader than the mere failure to plead"); *Mickalis Pawn Shop,* 645 F.3d at 129 "we have embraced a broad understanding of the phrase "otherwise defend""); *see generally* Gregory A. Kendall, *Defendants' Burdens Under Fed. R. Civ. P. 55: Post-Answer Defaults and Jurisdictional Waivers in City Of New York v. Mickalis Pawn Shop,* 81 U. Cin. L. Rev. 1079 (2013) (citing cases).

In 2007, Rule 55(a) was amended to strike the phrase "as provided by these rules." Some courts have held that the change was intended to permit a party to "show intent to defend" even if it did not comply with the Rules. *See, e.g., In re Clark*, 2010 WL 2639842, at *3 (W.D. Wash) (entry of default not appropriate where defendant's late answer showed an intent to defend); *Doe v. Board of Education of Jefferson County, Kentucky*, 2017 WL 11722216, at *2 (W.D. Ky.) (to the same effect, citing *Clark*); *Financial Casualty & Surety, Inc. v. Mascola*, 2012 WL 12905517, at *2 (D.N.J.) (same); *Geyer v. U.S. Van Lines*, 2013 WL 65458, at *4 (S.D.W. Va.) (same).

Here, Defendant's filings are not "pleadings" within the meaning of Rule 55(a), so entry of a default is appropriate. Furthermore, the filings demonstrate that Defendant never intended to defend. The lack of intention to defend is also evidenced by Defendant's failure to appear at the scheduling conference and failure to respond to the motion for default judgment. Thus, although Defendant "appeared" in this proceeding (see the discussion below), he never intended to defend against the claim. Like his petition, schedules, and SOFA, his filings in this adversary proceeding were not made in good faith. The Court will enter Defendant's default.

C.  Entering a Default Judgment.

Rule 55(b) provides:

(b) Entering a Default Judgment
 (2) By the Court. In all other cases, the party must apply to the court for a default judgment [...] If the party against whom a default judgment is sought has appeared

personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing [….]

A party "appears" as that phrase is used in Rule 55(b)(2) by making some presentation or submission to the court. In *Sun Bank of Ocala v. Pelican Homestead and Sav. Ass'n,* 874 F.2d 274, 276 (5th Cir. 1989), the court held:

> What constitutes an "appear[ance]" under Rule 55(b)(2), thus requiring both three-days' notice and the entry of judgment by the court, is not, therefore, confined to physical appearances in court or the actual filing of a document in the record. As Moore's treatise observes, "'[a]ppearance' is defined broadly ... to include a variety of informal acts on defendant's part which are responsive to plaintiff's formal action in court, and which may be regarded as sufficient to give plaintiff a clear indication of defendant's intention to contest the claim." Thus, courts have held that a letter from a defendant's counsel to plaintiff's counsel and a telephone conversation between them, in both of which the defendant's lawyer indicated an intention to defend the suit, sufficed as an appearance under Rule 55(b)(2).

874 F.2d at 276 (footnotes omitted). Filing a motion to dismiss normally constitutes an "appearance" for purposes of the rule. *Id.* at 277; *see also U.S. ex rel. Time Equipment Rental & Sales, Inc. v. Harre*, 983 F.2d 128, 130 (8th Cir. 1993) (citing *Sun Bank* with approval). Defendant, by filing the Notary Presentment and the Notice of Motion, appeared in this proceeding. Because of that, no default judgment can be entered unless Defendant has notice "at least 7 days before the hearing."

The UST filed and served the motion for default judgment on March 31, 2023. The time for Defendant to respond has expired, whether the deadline was 7 days (per Rule 55(b)(2))[10] or 21 days (per New Mexico Local Bankruptcy Rule 7007-1).[11]

"Upon a motion for default judgment, a district court accepts as true all well-pled allegations in a complaint, except those related to proving damages." *Anaya*, 326 F.R.D. at 693, citing *United States v. Craighead*, 176 F. App'x 922, 924 (10th Cir. 2006) (unpublished)); *see also United Financial Cas. Co. v. Morales*, 598 F. Supp. 3d 1167, 1172 (D.N.M. 2022) (same, citing *Anaya*). Here, the UST's complaint properly alleges the elements required to deny Defendant a discharge under 11 U.S.C. § 727(a)(4), namely that Defendant knowingly and fraudulently made false oaths on his bankruptcy petition, schedules, and SOFA.

D.  Due Process.

It appears Defendant was in jail when the UST served its motion for default judgment, where he remains to this day. Does that mean that the UST's motion for default should be denied because Defendant may not have received notice of the motion?

The answer is no. It has now been two and a half months since Defendant was jailed for violating the conditions of his pre-trial release. Had he wished to, he could have given the Court a

---

[10] The Court is not required to have an actual hearing. *See, e.g., Wright & Miller, Federal Practice and Procedure*, § 2688 ("numerous courts have determined that a hearing is not required before entering a default judgment") (citing six cases). The Court construes the rule to mean that a default judgment should not be entered for at least seven days after the motion has been filed and served on Defendant.

[11] NM LBR 7007-1 provides: 7007-1 Motion Practice in Adversary Proceedings (Except Summary Judgment Motions). All motions filed in adversary proceedings shall be served on opposing parties. Responses shall be due within 21 days after service.

new address for service[12] or taken some other action that would have alerted the UST and the Court that Defendant cared about this proceeding. Defendant has done nothing.

When Defendant filed the bankruptcy case, he was required to use the official petition form. *See* § 301(a) and Bankruptcy Rule 9009(a). The form of petition for individual debtors (B101) required him to give his mailing address (#6) and provided: "Note that the court will send any notices to you at the mailing address." "Generally, where notice is sent to the address listed by the debtor in the bankruptcy petition, due process is satisfied." *In re Clark*, 2007 WL 627451, at *2 (Bankr. S.D. Iowa) (citing *In re Villarreal*, 304 B.R. 882, 886 (8th Cir. BAP 2002)). Rule 7004(b)(9) does not require proof of actual receipt. *Clark*, citing *In re Vincze*, 230 F.3d 297, 299 (7th Cir. 2000). Mail service to the record address complies with Bankruptcy Rule 2004 and constitutes good service. *In re Wallace*, 316 B.R. 743, 746 (10th Cir. BAP 2004). "Thus, service is effective on a debtor even if mailed to the wrong address, if the address to which it is mailed is the last listed by the debtor in a filed writing." *In re Araujo*, 292 B.R. 19, 23 (Bankr. D. Conn. 2003), citing *Vincze*, 230 F.3d at 299-300; *see also In re Coggin*, 30 F.3d 1443, 1450 (11th Cir. 1994) (same); *In re Denman*, 565 B.R. 401, 403 (Bankr. W.D. Mich. 2017) ("the court should not speculate or conclude that service on a debtor at the address on the court's own records is defective.").

Defendant was required to update his address when it changed. Bankruptcy Rule 4002(a)(5). Failure to do so meant that Defendant might not receive motions and notices that were properly served but must live with the consequences. *See, e.g., In re Tatum*, 2012 WL 2076424, at *1 (Bankr. D. Kan.) ("In bankruptcy, debtors have a duty to 'stay in touch'"); *In re Formatech,*

---

[12] From time to time the Court deals with incarcerated debtors or other parties in interest. Accommodations are made for them to appear and file papers.

-12-
Case 22-01014-t    Doc 10    Filed 06/02/23    Entered 06/02/23 13:34:35 Page 12 of 14

*Inc.*, 2019 WL 7165930, at *8 (1st Cir. BAP) (quoting *Tatum*, the BAP held that "[t]o the extent that the Defendants' inaction in the proceedings leading to the Default Judgment was the consequence of lack of notice, we agree with the Canadian Superior Court and the bankruptcy court that "the responsibility for that is entirely at [the Defendants'] feet"); *In re Diskey*, 2015 WL 3504718, at *1 (Bankr. N.D. Ind.) (quoting *In re Williams*, 2014 WL 1017604 at *3 (Bankr. N.D. Ohio) for the proposition that "A debtor cannot avoid the consequences of failing to obey a court order ... by simply changing his address and then not informing the court as required...."); *In re Keswani*, 2021 WL 1554727, at *1 (Bankr. S.D.N.Y.) (to the same effect); *In re Johnson*, 2018 WL 2670469, at *21 (Bankr. N.D. Ala.) (quoting *In re Ruiz*, 2006 WL 6811033, at *3 (9th Cir. BAP), for the proposition that Bankruptcy Rule 7004 "implicitly requires diligence to provide notice of the change in address").

If the Court thought Defendant cared about this proceeding and was doing his best to defend, it might consider denying the default judgment motion and give Defendant a chance to fix all the problems discussed above. *See, e.g., In re Jafroodi*, 2023 WL 3310401 (Bankr. C.D. Cal.). The Court has no such thought. First, unlike in *Jafroodi*, Defendant has not appeared to protest the entry of a default judgment. Second, the Court has carefully reviewed Defendant's filings in the bankruptcy case and this proceeding. There is no question that Defendant does not now, and has never, taken the process seriously or attempted in good faith to do the simple things required to discharge debts that are dischargeable under § 523(a). Similarly, Defendant has never attempted to defend. There is no reason to put the UST to any more work.

Furthermore, the only debts Defendant listed on his bankruptcy schedules are owed to the credit unions and banks he defrauded. Given Defendant's guilty pleas to all fraud counts, the debts are nondischargeable. If not for the UST's timely filing of this adversary proceeding, the banks

and credit unions no doubt would have filed § 523(a) complaints. Defendant is not entitled to discharge these debts.

## Conclusion

To be eligible for a discharge, a debtor must, at a minimum, make a good faith attempt to disclose his assets, liabilities, income, and expenses. Defendant did not satisfy this simple requirement. Instead, the bankruptcy case appears to have been Defendant's misguided attempt to delay or derail the Criminal Case. Defendant is not entitled to a discharge. The Court will enter Defendant's default, and also will enter a default judgment denying Defendant's discharge under § 727(a)(4).

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: June 2, 2023
Copies to: Counsel of Record